which is 19-1145 U.S. v. Gehrmann. Oh, yes, excuse me, counsel. Is it Rummel? Rummel. Rummel. Thank you. Most likely it's R-U-M-L-Y. That's helpful. Is that English in derivation? It's Swiss German. It's only been pronounced once in my life. Correctly and not by Judge Lucero. And it wasn't me. It was when my son went through customs in Austria, so. Oh. Okay. May it please the court. My name is Jane Rummel and I represent Thomas Gehrmann. The role enhancement under 3B1.1 requires proof that Gehrmann exercised leadership control or at least one participant in this conspiracy. Control and leadership. Both are required. Now, he was the senior partner of the chiropractic firm? No, he was not. What was his administrative role in the firm? In the firm, he was the marketer. Carlson was the senior chiropractor. And at some point, evidence does show that Gehrmann took over some of the finances. But what was not clear. Does the record tell us in terms of the structure of the firm itself, these were equal partners? They were. The only difference was. No one partner owned a greater stake? No. They were all equal partners. However, in the testimony of Davis, and that is critical because he was the last partner brought in, he was buying into the partnership. So there was a payback situation with his buy-in. But I would direct the court and the clerks. Do we have a waiver issue here? I do not believe that we do. You refer to footnote 5 in the appellee's brief. I do. But that whole entire argument was based on the original attempt by the probation office to get a four-level enhancement. That is correct. And once that was off the table, no further objection to the lesser enhancement was ever mentioned? I disagree, Your Honor. Tell me where in the record it was mentioned. I will. In the briefs, both I think in the appellate brief and in the reply brief, there was a statement. Where in the record? It is in the sentencing hearing. And it is Mr. Frost at sentencing saying, and in terms of either of the sections, this isn't a case that involves some kind of sophisticated tax evasion scheme that involves millions and millions of dollars. There were three characters. Well, that's a different issue, isn't it? But the judge had to decide on enhancement whether or not A, B, or C was appropriate. And Frost said at sentencing, under any of the subsections, this does not apply. And the court heard that argument because he then counted participants. And he backed off of subsections A and B and said there were only three here. So we're only really looking at subsection C here. And then he pronounced his sentence or pronounced his decision with regard to that. And what is our standard review then under that set of circumstances? Under this, we believe it is a de novo review based on the law because it is not clear. Well, he found that this gentleman was a manager anyway. He did. But what was not clear from the probation's analysis or from the court's analysis or from the government's analysis, that there was a finding that he was a manager or had control over one of the other participants. Didn't the defendant say that he was the leader, manager, and supervisor, as did all of the employees that were asked about it? The important distinction under the enhancement is it is not... Who kept the cookie jar? Gehrman did at certain times. Who kept the secret record? That was a book that was kept and was used by all three of them. There was not just one secret record book that... There was one. ...that Mr. Gehrman kept? It was kept in the office. And those are the facts that are the most problematic for us. But the important thing about the Rubio decision, which came three months after the court pronounced sentence in this case, is it found even some control in that case, some control, and felt that that was not enough. You don't have to have control to be an organizer. Pardon me? Do you agree with me that you don't have to have control to be an organizer? No, I do not. Okay. Well, what I'm referring to are two Judge Ebell opinions that span 20 years, the first in 1997, the second in 2016, where he plainly states that. And to qualify as an organizer, no control is necessary, he says. The Rubio decision that was decided three months after Gehrman was sentenced made it clear that under all three levels of the enhancement, control is required. That's a four-level enhancement case, is it not? I believe it was. So it's not asking the same question. I believe that it is, because Gehrman was sentenced under subsection three, and under subsection three, the court made it clear in Rubio that control and supervision is required under all three, and it is just a matter of degree. Well, first of all, you're quoting Rubio, which is an unpublished decision, correct? It's not published yet. Well, it's not published, and I mean, we're talking July 24th, 2019, it's not published. And the two opinions that I just read to you are both published opinions that say with an organizer, you don't need control. There are cases earlier than Rubio that have dealt with the issue of whether or not control is required under subsection three. Are you contending that the two cases that I've cited to you, which are in the government's brief, it's not out of left field, that these cases have been overruled, or that I'm misreading them? Because I just read you a declarative sentence, and I could read you more, that says that an organizer does not require control. I will not take issue with the court's interpretation of that decision. However, I would like to point out a few others that are conflicting. And I believe the Rubio decision is important because it does try to bridge the gap of 20 years of confusion with regard to whether there are different standards under subsection A, B, or C. If the court will allow me just a minute. Under the Roberts decision, the 10th Circuit, 1993, the court held that manager or supervisor, who is by definition not an organizer or leader, must have decision-making authority or control over a subordinate. Under U.S. Albers, 10th Circuit. But isn't it a question of fact as to what he exercised or how he ran the operation? And if the district court makes that finding, doesn't it have to be clearly erroneous before we could set it aside? What we don't have in the trial court's decision is any findings at all with regard to how Gehrman had control over Davis. Except he admitted that he was the manager. And you say that's only the business. It was only for the business, yes. If you read Davis's testimony, Davis is clear that they all just took a third and he was the manager. Nobody forced his hand. Nobody made him do it. That's the younger person. That is the last person brought into the package. But he was brought into the operation, the conspiracy. Yes. He was told out, this is what we do, but nobody made him do it. He will say nobody made him do it. Well, you don't have to be made to do it to be the manager, to be subject to the manager. But what we don't have, even from the trial court, is a finding that Thomas was somehow coerced or controlled. And his testimony suggests otherwise. And in fact, and I would like to say, too, the cases, a lot of these cases that deal with conspiracy are drug cases. And I would like to distinguish this situation, tax evasion. Money's not a drug under these situations. Well, there's no part of a drug transaction that's good. No, I understand that. And with regard to the paying of taxes, nobody filed Tom Davis' tax return for him. He could have taken this money and reported it. He did not. But no one made him do that. So really, the extent of this conspiracy— Well, are you saying that the manager has to make people do things? A manager has control. Yes. Well, he says, okay, guys, here's how we're going to do it. And they say, oh, okay. If no one's making him do it, he doesn't have to join the conspiracy. So you're saying that there's got to be a coercive, forceful— A hierarchy. Yes. I do believe that's what it looks for. That's the word I would propose to ask your colleague as well. It seems to me that under United States v. Weaver, that's that Seventh Circuit case, the court held that there has to be, quote, some hierarchy among those involved in the criminal activity must exist to qualify a defendant for an enhancement. Was there a hierarchy even—and I recognize the distinction between the conspiracy and the practice—but was there a hierarchy in the practice, which is what I was trying to get at? No. It was just three chiropractors having a practice together. Well, there was two chiropractors. They hired a third, and then the third became a partner. But you say that there was no controlling partner, no partner that had a greater interest in the practice than another. No, there was not. But the two recruited him. They recruited him into this enterprise. They sat him down and said, here's how we do things here. And he said, fine by me. That is true. Okay, and recruitment is one of the factors that we're supposed to consider. It is one of the factors, yes, I will— Back to the hierarchy and the control, because your argument is really built on control. And so when I say organizer doesn't require control, and I cite these cases, here's a line as far as hierarchy and Judge Ebell writing a majority published opinion. Nothing in the guidelines requires that an organizer must exercise some direction or control over underlings. In other words, it's enough if you organize it. And you have these two chiropractors at one time who come up with this scheme, come up with this method. They organized it. And then when the new fellow comes in, they explain to him, here's how we do things. And they recruit him into doing this. Why is that not enough to say, plus two, affirm an organizer, an organizer alone? The law of conspiracy, and I'm at my three minutes here, but I will say that the law of conspiracy doesn't take much. And the government argued that. It can be informal. It can be very—nothing has to be written down. It can be implied. To bring Davis into the conspiracy is one thing. He joined, that's it. Once he joined, then we look at the enhancement for purposes of sentencing. It's a different analysis. Once he was in, he was in. And once he was in, they all three just did their thing. They divided the money equally. They sat down when they could. They looked at the money. And then went their separate ways. So that's basically what I'm saying. People join conspiracies in a number of ways, and then they're in. Once they're in, the question is, how does the conspiracy behave after that? Once they're in, the conspiracy is still a conspiracy. That is true. And the fact that nobody has to have their fingers broken or their arms twisted doesn't make it less a conspiracy or less a leader or manager or whatever you want to call it. It is important to note that the government or the trial court in this case found a supervisor or manager, did not find a leader or organizer. Those are in the findings. And if there is any distinction left between those four roles, and I would argue that they all require control, supervision, and hierarchy. But to that extent, it is different from the establishment of the conspiracy to begin with. How did the conspiracy, how was it carried out? How did it happen? How did it? Well, do you say that the conspiracy stops being a conspiracy? No. Once everybody agrees on how to divide the money? No. The question is, how did the conspiracy operate? And was there a hierarchy? And did Gehrman- So you want to reserve the rest of your time? Yes, I should. All right. Thank you. Thank you. Thank you. Good morning. May it please the court? My name is Alex Robbins, appearing on behalf of the United States. I'd like to start out with the court's permission by touching on three issues that the court just asked my colleague about, and point the court to some places in the briefs and the record that may help answer those questions. The court asked my colleague- Is there an answer, counsel? I'll tell you, I'm genuinely troubled about this case. Because in a typical conspiracy, you've got the drug conspiracy. You've got the guy in somewhere who gets the dope or the goods. The other guy who controls the sales. By the very nature of the quote, business, end of quote, there's a hierarchy. There's the boss, there's the dope, there's the carriers, there's the whatever. This is two guys practicing a profession. They decide to cheat on their taxes. So let's say the three of us here are in a law firm. Not me. No, I understand that the good guys aren't going to agree to cheat on their taxes. Right. Hopefully you would pay your taxes. But let's assume that we're bad guys. And we say, hey Jack, let's cheat on our taxes, because we'll save a lot of money. And Jack says, good, yeah, let's do. So Jack and Jill cheat on their taxes. And then we add another guy. And he comes and says, we cheat on our taxes. And he says, good, not for me. So he's going to cheat on his taxes too. Now you've got three guys cheating on their taxes. You don't have to have a manager. You don't have to have a senior partner. You don't have to have anybody. You don't have to have somebody who's got to hold the cookie jar. Maybe it might be the office manager that holds the cookie jar, for all I know. Why do you have to have a manager? You don't. In your hypothetical, you do not have to have. In your hypothetical, you don't need a manager as to the original two. And that's why we've focused so much on Davis as distinct from Carlson. And so I didn't want to flag that for the court. You have your Jack and Jill, as I understand your hypothetical, Jack and Jill are the original partners. And then bring Judge Phillips into the partnership, who, of course, says, no, I'm not going to do that. But at the very least, if we're looking at it as an inchoate attempt crime, I think in that hypothetical, Jack and Jill offering to Judge Phillips at that original lunch meeting. Let's call her Alice instead, OK? So Jack and Jill. Now they add Alice. I'm more comfortable with that too, Your Honor. It's all over, because I've already gone to the FBI. I'm just trying to roll the court's hypotheticals. My hypothetical blew up. But let's, because of the names. At the very least, the two people who were there first, who cooked up the scheme, who bring in a third person and tell him, this is what we're doing. This is how we do it. In a case like this, where there is a conspiracy, there was a guilty verdict on the conspiracy count. We are dealing with a conspiracy. There was a meeting of the minds. Yes, I think that that is sufficient for the subsection C textually under organizer, certainly under manager and supervisor, as in this case, if the original two partners, or one of the original two partners, in this case the defendant, on an ongoing basis maintained the records of how they were dividing up the money, maintained physical custody over the money that was the object of the events. Hold on, because you're dominating the conversation. It's not helping me. I just like to test the hypothetical. If you have Jack and Jill, equally culpable birds, running a tax cheat operation, and they have a neutral stakeholder hold the cookie jar, or one of them happens to have the cookie jar in his office versus the other, but they all have equal access to the cookie jar, in that situation, do you have two managers and two supervisors? Just among the two of them, assuming they're convicted of this conspiracy, does one of them necessarily have to be in the hierarchy? I think not necessarily. I think your question is, which is different from this case, is much closer to the line, because they're giving it to a third party rather than one of them keeping it themselves. Right. But let me continue my hypothetical. So now Jack and Jill are running this tax scheme. Neither of them is the manager. Neither of them is the supervisor. They're both managing a supervisor. Now they add a third, Alice. Now Alice joins, and she says, OK, I'm happy with this conspiracy. I'm saving a lot of money. So she happily jumps in on the plot. Are these two birds, assuming you're correct, are they co-managers and co-supervisors? Are they both going to get the enhancement? Those are two separate questions. I'm less sure about whether they're both managers or supervisors under your hypothetical. Right. They will get the enhancement, because they're both organizers under subsection C who brought the third person into the scheme. And that goes to one of the issues I wanted to hit on, which is the organizer component of the subsection C enhancement. I would refer this court to the Apt case and to the Levin case, both of which we cite in our brief. Recruiting and instructing is enough, actually in the Levin case, even for the four-level enhancement. In this case, we're not worried about that. But bringing someone to a scheme, recruiting them and instructing them as to how the scheme works, yes, would be enough for the organizer enhancement, even under your hypo, where no one is a manager or supervisor on an ongoing basis. For both Jack and Jill getting the enhancement. Correct, for both Jack and Jill bringing Alice into the scheme. So now, let's get to this case. Are there two partners both getting the enhancement and one of them not? In this case, the defendant got the enhancement. Only one. Carlson, in his sentencing, did not get the enhancement. No one proposed it. The probation officer didn't. It was just not on anyone's radar. But the district court, in sentencing both the defendant and in Carlson's sentencing transcript, repeatedly said that he thought that the two of them, Carlson and Gehrman, were equally culpable. And that was part of the district court's rationale in sentencing Carlson to a well-above-probation sentence. When I think probation, I'm not positive with that. And certainly, the defense was asking for probation for Carlson. Did two chaps get the same enhancement, the same sentence? Yes, certainly. Yes. If you have two managers or supervisors, two organizers, they can get the same enhancement. No, but in this case, did they both? Oh, no. I said they did not. Carlson did not get any role enhancement in his sentencing. We went to check that. Obviously, it's somewhat relevant. He did not. He did, however, get the district court's stated same district judge sentenced Carlson and said, in the 3553A analysis, that he, the judge, thought that Carlson was equally culpable to Gehrman, the defendant in this case. So what did Gehrman do that Carlson did not? Gehrman kept the secret records notebook. He created the secret records notebook initially because he didn't trust Carlson. And he kept track of it himself. The exhibits at trial when the prosecution had witnesses look at the book were, I think, almost all, certainly the vast majority of them, were in Gehrman's handwriting. And he kept custody of the cookie jar. And that was one thing I wanted to hit at the beginning of this. My colleague, I think, was mistaken in saying, in response to this court's question, who kept the records? She said all three. At page four of her opening brief, it says that he kept the records and the secret notebook. That's not an indispute, I don't think. Was the notebook marked secret notebook or secret record? I think it was a notebook that was pre-printed records on it. And someone, Gehrman, wrote by hand, he testified at trial when asked about this, secret on the front of the notebook above records. So the entire thing was entitled secret records. And was there something written on the cookie jar, said cookie jar? I don't think so. I think that was descriptive. It was a jar that had a panda on it initially. And then at some point, they lost the panda. But people still called it the cookie jar. There was a fair amount of discussion of what exactly the cookie jar looked like at trial. How precise? Oh, excuse me. Sorry. Do you concede that there is not a waiver of this particular argument? No, we don't. But I want to clarify. I think that's actually the trickiest issue in this case. And I wanted to clarify that. As we understand the defense argument, and certainly my colleague can clarify this, the defense has two arguments. One is, I think, the district court didn't make a sufficient finding, didn't say the right words. Not just that what the district court found was that the court finds that Gurman was at a minimum a manager or supervisor in this criminal activity. The defense wants the district court to have said was a manager or supervisor over the other chiropractors, which is what the PSR said in paragraph 53. That was in the PSR. So there's a magic words, sort of procedural adequacy component to this. And then I think the defense says, second, even if there was a sufficient finding, it's clearly erroneous under this record. And I want to point that out as well. My colleague said that this is a de novo review standard. I think that's wrong. I think page seven of her opening brief correctly sets out the standard review as clear error. So there's two different issues here. What we're saying is, at the very least, the district court's finding on this factual issue that is now before the court, the manager or supervisor factual issue, is more specific than what the defense said at sentencing to flag this issue, if at all. So there are two options, either one of which should lead this court to affirm. Either the defense, in just once referring to either subsection, failed to preserve this procedural adequacy issue, in which case plain error review applies and we're under the Marquez case. Or alternatively, if the defense did preserve the issue, then the district court, a fortiori, made a finding on the issue, and this case is reviewed for clear error. In which case, I would refer this court to, again, Apt or Levin, which I think are analogous because you have a legal business as well as a criminal conspiracy on top of that business. So it's a little bit different than the drug cases. It's more like this. You have an actual brick and mortar business and then illegal activity happening within that business. And we agree with the defense that the question here is not, was Gurman a manager or supervisor in the business? It's, was he a manager or supervisor over the criminal activity? That's absolutely right. And we think the district court got that right, and that's what we've been basing arguments on. We're talking not about who was dealing with the tax preparer, the office staff, or who's doing payroll. We're talking about who was in charge of dividing up the money and keeping it. Let me ask you a couple more questions. Section 3B1.1, quote, for small criminal enterprises like the one in this case, the relative difference in levels of control between leaders and organizers reflected in subsection A and managers is less significant than for large criminal enterprises. Why should we, in a case of two managers, if we're going to take your argument at face value, that seems to me come squarely under 33B1.1. You really, when you have two people saying, hey, let's cheat on our taxes, one isn't necessarily managing the other. They're both managing the other. They're both agreeing to do it. Why is there necessarily a manager and a supervisor? It seems to me you need to look for a hierarchy. I think that the background notes, which I think your honor is reading from, the inclusiveness of subsection C, as the notes characterize it, helps the government in this case. The point being that when you're dealing with a smaller organization, the lines between leader, organizer, at the higher level, and a mere manager or supervisor, that distinction that we agree that the defense makes, Rubio's 12 automated, we agree with it, that there's a distinction between those two levels. Most of the defense cases are the higher level ones. But that distinction becomes fuzzier and less important in a smaller organization. The first paragraph of 3B1.1 tells us that enhancements are designed to afford greater punishment for relatively greater responsibility. So if you have, fine, one of them's holding the cookie jar. One of them makes more entries in the book than the other one. It doesn't strike me on its face that one is bossing the other one around. One is leading the conspiracy, as it were. They're both in the cookie jar, dipping in at the same level and then getting the same benefit of the criminal activity. It just seems to me you're searching for a manager, a supervisor, when, in fact, it's three guys basically all cheating on their taxes. But to go back, Your Honor, to my answer to your hypothetical, the distinction is much clearer when you look at the defendant versus Davis. Davis was a new partner. He was the junior partner. He came in out of a chiropractic school and an internship. Fine, so let's give Davis a blue ribbon for coming in later. But he's still cheating on his taxes just like the other two. You don't read in reviewing the record any protests from Davis saying, oh, this is terrible. We shouldn't be doing this. You guys should not be doing this. I'm being coerced to cheat on my taxes. There's none of that in this case. And Davis pleaded guilty to the underlying crime, Your Honor. I see my time's up. Can I wrap up? Davis pleaded guilty. And he received a probationary sentence, I think because he was less culpable. He was brought into the scheme and instructed in how this scheme worked and told this is how we do it. Thank you, counsel. By the defendant. At the very least, it's not clearly running this out. Can I ask one more question? The court departed after he made his original calculation. He then varied downward. Yes, Your Honor. Assuming that we set aside the enhancement, given the downward departure, what's the result, the bottom line result? If you set aside the enhancement, as distinct from finding error in the procedural adequacy of the description, those are two separate questions. If you actually set aside the enhancement, this enhancement should not have been opposed, then you'd need to vacate and remand under Melina Martinez, notwithstanding that it's below guidelines. I want to know what the sentence would be with a two level downward departure. Yes, Your Honor. The sentence would be two levels down. So he was a level 18. He'd be a level 16, which I believe would take him to 21 to 27 months. So the sentence he received was 24 months, would still be in the middle of that range. But again, Melina Martinez tells us that in the mine run of cases, you're going to need to send it back anyway. That's distinct from the argument we're making, that if you find the error, not in the enhancement itself, but in the procedural adequacy of the description, under Marquez, which is after Melina Martinez, you don't need to vacate and remand for that. Because the sentence would have come out the same way. There is no prejudice in that case. OK. Thank you, Your Honor. Contrary to my best instincts, you add 53 seconds to her time, please. Or I think you ran in about a minute extra. So you've got two minutes to make your case. In response to a question that was posed earlier as to the manager role and what is required for that, I would under C, under subsection C, I would also like to address the court's attention to U.S. versus Valdez, which is a 1999 10th circuit case at 127 F 3rd 1267, which says that the enhancement applies only to a defendant who exercised some degree or control or organizational authority over someone subordinate to him in the scheme. Does it even matter? Don't we just look to the least difficult to prove, and that's an organizer? And so who cares about leader? Who cares about supervisor or manager? They're irrelevant? Well, this case deals specifically with the finding that the trial court made, that he was either a manager or a supervisor. But the evidence does not establish in this case, really, that he was a manager or a supervisor and there was a hierarchy among the three conspirators. The court made no finding that Gehrman had control over Davis and he made no finding that the criminal activity was otherwise extensive. We don't know what case law the judge applied. So it is not just we, I don't think the judge understood the difference between what probation was trying to do, which was expand the participants beyond five people and distinguish between a manager of the business as opposed to a manager of the conspiracy. This enhancement looks to the hierarchy among the participants, and there was not one in this case. And unless there are any questions, I believe that sums it up. Thank you, counsel. Counsel are excused. The case is submitted. The court will take a stand in place break. We'll be back in just a few minutes.